Michael A. Shumrick
Jean Y. Meyer
Meyer Construction Law, LLC
529 E Main Street, Unit 112
Bozeman, MT 59715
Tel: (406) 219-8422
shumrick@meyerconstructionlaw.com
meyer@meyerconstructionlaw.com

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| MICHAEL FERNANDEZ, individually and as Co-Trustee; HEATHER FERNANDEZ, individually and as Co-Trustee; HEATHER L. FERNANDEZ REVOCABLE TRUST, a Minnesota revocable trust,<br><br>Plaintiffs,<br><br>v.<br><br>CENTRE SKY ARCHITECTURE, LTD., a Colorado corporation,<br><br>Defendant. | Case No.: CV-24-25-BU-BMM-JTJ<br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiffs, Michael Fernandez, Heather Fernandez, and the Heather L. Fernandez Revocable Trust, by and through their undersigned counsel, Meyer Construction Law, LLC, submit their Complaint and Jury Demand against Defendant Centre Sky Architecture, Ltd., as follows:

1

## PARTIES

1. Plaintiff, Michael Fernandez, is a resident of the State of Minnesota with a primary residence located at 5101 Indianola Avenue, Edina, MN 55424. Michael Fernandez is a Co-Trustee of the Heather L. Fernandez Revocable Trust.

2. Plaintiff, Heather Fernandez, is a resident of the State of Minnesota with a primary residence located at 5101 Indianola Avenue, Edina, MN 55424. Heather Fernandez is a Co-Trustee of the Heather L. Fernandez Revocable Trust.

3. Plaintiffs hereafter refer to Michael and Heather Fernandez collectively as the "Fernandezes" unless specifically referenced otherwise.

4. Plaintiff, the Heather Fernandez Revocable Trust ("Trust"), is a revocable trust organized under the laws of the State of Minnesota with a primary address being located at 5101 Indianola Avenue, Edina, MN 55424. The Fernandezes are the two Co-Trustees of the Trust.

5. Centre Sky Architecture, Ltd. ("Centre Sky"), is a Colorado for profit corporation, with a principal address of 11 Lone Peak Drive, Unit 206, Big Sky, MT 59716.

## JURISDICTION AND VENUE

6. Jurisdiction is proper in this Court under 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000.00 and the Fernandezes and the Trust, and Centre Sky are citizens of different states and/or are organized in different states.

7. Venue is proper in the Butte Division of the District of Montana because: (a) the home subject to this action is located in Gallatin County, (b) some of the agreements that are the subject of this action were entered into and performed and/or breached in Gallatin County;

and/or (c) some of the tortious or other wrongful conduct described elsewhere in this Complaint occurred in and/or had consequences and caused injury, damages, or losses in Gallatin County.

## GENERAL ALLEGATIONS

A. **CONTRACT WITH CENTRE SKY**

8. This Complaint arises from residential expansion construction of a home located at 169 Nighthawk Fork, Big Sky, MT 59716 ("Home"). The Trust is the title owner of the Home along with the Fernandezes as Trustees of the Trust.

9. On or around May 22, 2020, the Fernandezes entered into a Standard Short Form of Agreement Between Owner and Architect, American Institute of Architecture ("AIA") Document B105-2017 ("Contract"), for the design and construction administration of the expansion to the Home. The Fernandezes outline pertinent provisions of the Contract below.

10. Centre Sky was to design an expansion of the great room, dining room, kitchen, and conversion of the main level entry at the Home. Centre Sky was also to design adding office space and a bathroom to the upper level of the Home. After the design, Centre Sky was to be the administrator of the actual construction of the expansion to the Home.

11. Centre Sky was to perform the Contract in two parts: the design phase and the construction administration phase. Language in the Contract referring to the "Architect" is referring to Centre Sky. With regard to the design phase, the Contract states:

> During the Design Phase, the Architect shall review the Owner's scope of work, budget and schedule and reach an understanding with the Owner of the Project requirements. Based on the approved Project requirements, the Architect shall develop a design, which shall be set forth in drawings and other documents appropriate for the Project. Upon the Owner's approval of the design, the Architect shall prepare Construction Documents indicating requirements for construction of the Project and shall coordinate its services with any consulting services the Owner provides. The Architect shall assist the Owner in

filing documents required for the approval of governmental authorities, in obtaining bids or proposals, and in awarding contracts for construction.

12. With regard to the construction administration phase, the Contract states:

During the Construction Phase, the Architect shall act as the Owner's representative and provide administration of the Contract between the Owner and Contractor. The extent of the Architect's authority and responsibility during construction is described in AIA Document Al05-2017, Standard Short Form of Agreement Between Owner and Contractor. If the Owner and Contractor modify AIA Document A105-2017, those modifications shall not affect the Architect's services under this Agreement, unless the Owner and Architect amend this Agreement.

13. In this provision in Article 1 of the Contract above, the Contract is expressly incorporating by reference the provisions and language of AIA Document A105-2017 (hereafter "Document A105-2017"). As such, the obligations of the Architect (Centre Sky) under Document A105-2017 are also the obligations of Centre Sky under the Contract.

14. Per the language of Document A105-2017, Centre Sky's duties and obligations to the Fernandezes and the Project included, but were not limited to, the following:

    a. Centre Sky was to provide administration of the contract between the Fernandezes and the General Contractor.

    b. Centre Sky was to visit the Project at intervals appropriate to the stages of construction to become generally familiar with the progress and quality of work.

    c. Based on Centre Sky's observations and evaluations of the General Contractor's Applications for Payment, Centre Sky was to review and certify the amounts due to the General Contractor.

    d. Centre Sky had the authority to reject work of the General Contractor that did not conform to design documents.

    e. Centre Sky was required to promptly review and approve or take appropriate action upon the General Contractor's submittals for purpose of checking for conformance with information given and the design concept expressed in the Contract.

15. In summary, under Document A105-2017 and the Contract, Centre Sky was responsible for physically certifying that Applications for Payment made by the General Contractor conformed to actual work performed and actual payments made to subcontractors by the General Contractor. Centre Sky was obligated to certify that the General Contractor was actually entitled to the amounts the General Contractor requested from the Fernandezes.

16. In this regard, Document A105-2017 further defined Centre Sky's obligations to certify Applications for Payment as the following:

> At least ten days before the date established for each progress payment, the Contractor shall submit to [Centre Sky] an itemized Application for Payment for Work completed in accordance with the values stated in this Agreement. The Application shall be supported by data substantiating the Contractor's right to payment as the Owner or [Centre Sky] may reasonably require, such as evidence of payments made to, and waivers of liens from, subcontractors and suppliers. Payments shall be made on account of materials and equipment delivered and suitably stored at the site for subsequent incorporation in the Work. If approved in advance by the Owner, payment may similarly be made for materials and equipment stored, and protected from damage, off the site at a location agreed upon in writing.
>
> …
>
> [Centre Sky] will, within seven days after receipt of the Contractor's Application for Payment, either (1) issue to the Owner a Certificate for Payment in the full amount of the Application for Payment, with a copy to the Contractor; (2) issue to the Owner a Certificate of Payment for such amount as [Centre Sky] determines is properly due, and notify the Contractor and Owner in writing of [Centre Sky's] reasons for withholding certification in part; or (3) withhold certification of the entire Application for Payment, and notify the Contractor and Owner of [Centre Sky's] reason for withholding certification in whole.

17. Pursuant to the aforementioned provisions of the Contract and Document A105-2017, Centre Sky was obligated to act as the gatekeeper to the Fernandezes' funds by certifying the General Contractor was actually owed money it requested from the Fernandezes. Because the Fernandezes live in Minnesota, and because the Trust is organized and has its principal address

in Minnesota, the Fernandezes could not be at the Home for extended periods of time during the construction, and it was expressly agreed and understood, and material to the Contract, that Centre Sky would be the Fernandezes' on-site representative at the Home to certify that the Fernandezes and the Trust were paying for actual work performed or for other legitimate expenses. Otherwise, the Fernandezes had no way of knowing whether draw requests submitted by the General Contractor to the Fernandezes were legitimate and substantiated. As further explained in detail below, Centre Sky undertook performance of its obligations as construction administrator, albeit unsatisfactorily and in breach of the Contract.

**B.  THE PROJECT AND ACTS, OMISSIONS, AND BREACHES BY CENTRE SKY**

18. The General Contractor for the construction was Taylor Graham ("Graham") and his now defunct company, Montana Custom Build, Inc., a/k/a Montana Custom Build, LLC ("MCB"). The Fernandezes hereafter collectively refer to Graham and MCB as the General Contractor unless specifically referenced otherwise.

19. The Fernandezes in their capacities of Co-Trustees of the Trust hired the General Contractor based off the recommendations of Centre Sky. The Fernandezes would have otherwise not hired the General Contractor but for Centre Sky's repeated recommendations of the General Contractor formed after alleged previous work between Centre Sky and the General Contractor. The extent of the alleged previous relationship between Centre Sky and the General Contractor is unclear. However, given the General Contractor's theft of hundreds of thousands of dollars of the Fernandezes' and the Trust's funds, the Fernandezes believe Centre Sky made intentional, or at the least negligent, misrepresentations about the integrity of the General Contractor and its ability to manage the size and expense of the construction project.

6

20. The Construction Agreement between the General Contractor and the Fernandezes in their capacities of Co-Trustees of the Trust provided for the fixed, guaranteed maximum price of $1,551,378.75 for completion of the Home's expansion project.

21. Centre Sky began undertaking the design of the Project in or around June 2020. By June 2021, Centre Sky provided notice to the Fernandezes that it had approved the construction design. Within a document titled "Construction Documents Approval," Centre Sky informs the Fernandezes that it will thereafter be "part of construction phase services…where construction meetings, site visits, review of pay applications, RFI's, change orders, schedules, and substantial completion will be reviewed by Centre Sky Architecture." This was to be for Centre Sky undertaking its obligations as the construction administrator pursuant to the Contract and Document A105-2017.

22. Mike Hall ("Hall") was the original Project Manager for Centre Sky who initially was supposed to be overseeing the construction administration, including certification of Applications for Payment (otherwise known as "draws") from the General Contractor. On or around July 16, 2021, the General Contractor submitted its first Application for Payment to the Fernandezes and Centre Sky for payment of $180,161.88 ("July 2021 Draw"). After Centre Sky certified payment of the July 2021 Draw, the Fernandezes paid $180,161.88 constituting the July 2021 Draw. Thereafter, in or around August 2021, the General Contractor began physical construction of the expansion to the Home.

23. In or around September 23, 2021, the General Contractor submitted another Application for Payment ("September 2021 Draw") to the Fernandezes and Centre Sky for

payment of $184,161.88. Upon wrongful certification of the September 2021 Draw by Centre Sky, the Fernandezes paid the General Contractor $184,161.88 for the September 2021 Draw.

24. In or around, December 3, 2021, the General Contractor submitted an Application for Payment to the Fernandezes and Centre Sky for payment of $252,699.89 ("December 2021 Draw"). Pursuant to its obligations as the construction administrator, Centre Sky was obligated to certify that the December 2021 Draw was substantiated by actual work performed and actual payments made or owed to subcontractors of the General Contractor. On or around December 8, 2021, Hall, on behalf of Centre Sky, wrongfully certified the entirety of the December 2021 Draw for payment by the Fernandezes. The Fernandezes would later discover that Centre Sky's certification of the December 2021 Draw was unsubstantiated and baseless, leading them and the Trust to incur damages.

25. In or around March 24, 2022, the General Contractor submitted an Application for Payment to the Fernandezes and Centre Sky for payment of $337,236.28 ("March 2022 Draw"). Pursuant to its obligations as the construction administrator, Centre Sky was obligated to certify that the March 2022 Draw was substantiated by actual work performed and actual payments made or owed to subcontractors of the General Contractor. By the time the March 2022 Draw was submitted to Centre Sky for certification, representative of Centre Sky, Mark Hampton ("Hampton"), had taken over as the Project Manager for the expansion of the Home. Upon information and belief, Hampton took over as Project Manager in the place of Hall because Mike Hall left Centre Sky.

26. On or around March 25, 2022, Centre Sky, through Hampton, wrongfully certified the entirety of the March 2022 Draw for payment by the Fernandezes and the Trust. With regard to the March 2022 Draw, Hampton wrote to the Fernandezes:

> "I have gone over the [March 2022 Draw] and found some discrepancies, I assumed there were some missing invoices. I contacted [the General Contractor] and they were quick to respond and it was cleared up to my satisfaction. I have enclosed the updated complete [March 2022 Draw] for your records.
>
> …
>
> Lastly Mike [Fernandez] please keep these remarks between yourself and me please. I believe it was a simply mistake and I do not want to sour my relationship with [the General Contractor]. I (CSA) will keep you as my number one focus in this project!"

27. In a separate email to the Fernandezes from Centre Sky, in which Centre Sky sought payment of an invoice #21 from Fernandez and the Trust, Centre Sky described the work it performed in relation to the March 2022 Draw as:

> "[March 2022 Draw] coordination and lien releases…site visit."

28. Centre Sky sought $1,433 from the Fernandezes and the Trust for allegedly certifying the March 2022 Draw. Pursuant to Centre Sky's certification of the March 2022 Draw, the Fernandezes paid the General Contractor $337,236.28 on or around March 28, 2022. The Fernandezes also subsequently paid Centre Sky's invoice #21 which was for allegedly certifying the March 2022 Draw.

29. The Fernandezes have since discovered that Centre Sky's certification of the March 2022 Draw, via Hampton's March 25, 2022, email was baseless, unsubstantiated, and a complete breach of Centre Sky's duties and obligations it owed to the Fernandezes as the construction administrator. On or about, April through May 2022, Graham, the owner of MCB, advised the Fernandezes that he was experiencing mental health problems which necessitated

9

that he go to the State of Georgia. Graham's declaration and actions essentially served as a unilateral suspension of his and MCB's services as the General Contractor for the construction.

30. Following Graham's and MCB's departure from the Home's expansion construction and suspension from service as the General Contractor, the Fernandezes discovered the following facts:

    a. Despite the Fernandezes having paid $65,072.00 for "Roofing Materials" to the General Contractor in response to the allegedly certified December 2021 Draw and March 2022 Draw, Advanced Roofing, the material supplier was not paid anything by the General Contractor. In fact, Advanced Roofing, which had ordered the relevant materials was obliged to sell the materials to another customer. The Fernandezes have subsequently had to place another order for materials with Advanced Roofing at a significantly higher price because of wild fluctuations in the price of materials.

    b. Despite the Fernandezes having paid $20,000 for "MTC HVAC Premier Air Deposit" in response to the allegedly certified December 2021 Draw, the material supplier was not paid anything by the General Contractor. Centre Sky certified payment for this amount without any underlying documentation from the General Contractor validating this amount. Centre Sky also failed to obtain a lien waiver from an HVAC contractor validating this amount was owing.

    c. Despite the Fernandezes having paid $11,000 for "Ceramic Trim – MTC Ceramic Tile Material Deposit - $11,000" in response to the allegedly certified December 2021 Draw, the material supplier was not paid anything by the General Contractor. Centre Sky certified payment for this amount without any underlying documentation from the General Contractor supporting this amount. Centre Sky also failed to obtain a lien waiver from a trim installer validating this amount of work had been performed or was owing.

    d. Despite the Fernandezes having paid $8,000 for "MTC Plumbing Fixture Deposit $8,000.00" in response to the allegedly certified December 2021 Draw, the material supplier was not paid anything by the General Contractor. Centre Sky certified payment for this amount without any underlying documentation from the General Contractor supporting this amount. Centre Sky also failed to obtain a lien waiver from a plumbing contractor validating this amount was owing.

    e. Despite the Fernandezes having paid $27,300 for "Countertops – The Flooring Place Cost of Countertops" in response to the allegedly certified March 2022

        Draw, the material suppliers was not paid anything by the General Contractor. Centre Sky also failed to obtain a lien waiver from a countertop installer validating this amount of work had been performed or was owing.

f.     Despite the Fernandezes paying $24,150.00 for "Windows and Doors – MTC Window Deposit" in response to the allegedly certified September 2021 Draw, Sierra Pacific, the window supplier was only paid $11,000. Fernandez weas obligated to make a duplicate payment directly to the window supplier in the amount of $15,230.14.

g.     Despite the Fernandezes paying $56,170 for invoices associated with Mr. Nick Anderson's subcontractor work, Mr. Nick Anderson informed the Fernandezes that he was not paid in full and was still owed $26,170.

h.     The Fernandezes paid $20,000 in "General Conditions" in response to the allegedly certified December 2021 Draw and March 2022 Draw, the amount of which was not supported by any underlying documentation or invoices. Centre Sky also failed to obtain a lien waiver from the General Contractor validating this amount of work had been performed or was owing.

i.     Despite the Fernandezes paying $50,554.19 for "MTC Framing Labor Costs to date from last invoice" the documented payments to the potentially implicated subcontractors in this pay period only total $46,198. What is more, the Pay Application submitted by the General Contractor, provides no documentation to validate the claimed cost (*i.e.*, invoices from the framing subcontractors). Centre Sky should not have approved this payment without supporting documentation. Even further, included within the $46,198 figure is a combined payment to Mike Emery (the framing contractor) for $9,230.00 which encompasses the Home itself but also another project that is not relevant to this case. Thus, the $46,198 overstates the payments made for framing labor in that pay period. In any event, at a minimum, the General Contractor misappropriated the Fernandezes and the Trust for $4,356.19 in overstated framing labor expenses.

j.     Despite the Fernandezes paying $66,000 for "MTC Framing Draw brings to 50%" there is no supporting invoices to validate that amount. Because there is no supporting documentation to validate that amount, Centre Sky should not have approved the charge. What is more, a review of the General Contractor's checks reflects that the General Contractor only paid $30,437.81 in potentially applicable charges. Thus, the $66,000 overstates the payments made for framing in that pay period. The General Contractor misappropriated $35,562.19 from the Fernandezes and the Trust, which Centre Sky certified.

11

      k.      Despite the Fernandezes paying $11,140.63 for "Demolition" in response to the allegedly certified March 2022 Draw, no documentation or invoicing was provided by the General Contractor to support this amount. Therefore, Centre Sky failed to validate whether any work had been performed in relation to this portion of the March 2022 Draw. Centre Sky also failed to obtain a lien waiver from the General Contractor validating this amount of work had been performed or was owing.

31.     The above list is not necessarily exhaustive. In summary, it is estimated that the General Contractor misappropriated more than $353,615.03 from the Fernandezes and the Trust despite Centre Sky allegedly certifying that amounts being charged by the General Contractor to the Fernandezes were substantiated. Despite charging the Fernandezes and the Trust for alleged work obtaining lien waivers from subcontractors for the March 2022 Draw, Centre Sky never validated that the General Contractor was actually paying subcontractors with funds paid by the Fernandezes and the Trust in order to obtain those necessary lien waivers.

32.     The Fernandezes also learned that the General Contractor was using funds paid by them and the Trust for the Home's expansion on other homes the General Contractor was working on in the Big Sky area. Centre Sky knew, or should have known, that the General Contractor was misappropriating funds from the Home's expansion and used on other projects wholly unrelated to the Home.

**C.     CENTRE SKY KNEW, OR SHOULD HAVE KNOWN, OF THE GENERAL CONTRACTOR'S FRAUD**

33.     The Applications for Payment and associated invoicing referred to above reflect that, had Centre Sky performed competent administration of the Home's construction and review of the General Contractor's invoices, it should have identified the General Contractor's fraud without damage to the Fernandezes and the Trust.

34. There are several charges for which no supporting documents were provided by the General Contractor, and which ended up being fraudulent charges. For example, the $65,000 for roofing material, the $66,000 framing invoice, and the miscellaneous "deposits" itemized above. By Centre Sky simply requesting lien waivers from the relevant vendors or requesting supporting documents from the vendors, the General Contractor would not have been able to defraud the Fernandezes.

35. Moreover, Centre Sky failed to staff the construction project at the Home with local representatives who could monitor the progress of construction. Hampton was in Oklahoma at times relevant to the construction and thus this contributed to Centre Sky's failure to fulfill its duties under the Contract. By failing to have an onsite representative to monitor the progress of construction, Centre Sky breached the Contract.

36. As a result of the General Contractor's theft of the Fernandezes' and the Trust's funds, Michael Fernandez, as a trustee of the Trust, instituted legal action against the General Contractor. After litigation, the Trust obtained a judgment against the General Contractor for $1,066,289.66. The General Contractor entered into a stipulated judgment in which it admits it committed actual fraud against the Trust and the Fernandezes.

37. As of the date of this Complaint, the Fernandezes have paid the General Contractor $954,390.65, $353,615.03 of which the General Contractor completely misappropriated and never applied to any aspect of construction of the Home. The Fernandezes estimate that the cost to complete construction will be approximately $1,218,801. As a result of Centre Sky's breaches of the Contract and other tortious conduct, the Fernandezes and the Trust

have also suffered consequential damages for loss of use, loss of rental income, attorney fees, and litigation costs.

## **FIRST CLAIM FOR RELIEF**
(Breach of Contract – Fernandezes Against Centre Sky)

38. The Fernandezes and the Trust incorporate by reference the allegations above as if set forth herein.

39. Under Montana law, when a party fails to perform its obligations under the terms of a contract, that party is in breach of contract and liable to the non-breaching party for all damages associated with said breach, including consequential damages.

40. The Fernandezes entered into the Contract and associated documents with Centre Sky for design and construction administration of the expansion to the Home. The Contract was a valid and enforceable contract.

41. The Fernandezes provided sufficient consideration to Centre Sky for the enforceability of the Contract to impose the duties identified throughout this Complaint on Centre Sky.

42. The Fernandezes fully performed under the Contract at all times relevant to this Complaint.

43. As alleged throughout this Complaint, Centre Sky breached its duties owed to the Fernandezes and consequently the Contract with the Fernandezes.

44. The breaches by Centre Sky of the Contract have damaged the Fernandezes, causing the Fernandezes direct, resulting, and consequential damages in an amount to proven at trial.

## SECOND CLAIM FOR RELIEF
(Negligence – All Plaintiffs Against Centre Sky)

45. The Fernandezes and the Trust incorporate by reference the allegations above as if set forth herein.

46. Centre Sky owed the Fernandezes duties arising from the transactions it coordinated, solicited, and entered into with the Fernandezes. Such duties included, but are not necessarily limited to, acting within the standard of care as a licensed architect firm and construction administrator, and employing a level of care to protect the financial interests of Fernandez as well as protect the integrity of the construction project relating to the Home.

47. Centre Sky owed the Trust duties as a title owner of the Home to act within the standard of care as a construction administrator and to ensure the construction of the expansion to the Home was completed in an efficient manner, both in terms of timeliness and cost.

48. Centre Sky breached these duties owed to the Fernandezes and the Trust as detailed throughout this Complaint.

49. The Fernandezes and the Trust have suffered direct, resulting, and consequential damages as a result of Centre Sky's breaches of its duties in an amount to be proven at trial.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request a judgment against Centre Sky as follows:

a. On all of the Plaintiffs' claims for relief in favor of the Plaintiffs and against Centre Sky;

b. For general, economic, non-economic, actual, resultant, and consequential damages in an amount to be determined at trial;

c. For prejudgment interest, post-judgment interest, and all other interest allowable by law;

d.  Attorney fees and costs, to the extent allowed by statute, rule, or contract;

e.  All other relief that this Court deems appropriate under the circumstances.

## JURY DEMAND

**Plaintiffs hereby demand a trial by jury on all issues so triable.**

DATED: April 22, 2024                    MEYER CONSTRUCTION LAW, LLC

By: _____
Michael A. Shumrick
Jean Y. Meyer
529 E Main Street, Unit 112
Bozeman, MT 59715
Office: (406) 219-8422
shumrick@meyerconstructionlaw.com
meyer@meyerconstructionlaw.com
*Attorneys for Plaintiffs*